(C. D. 1828)

JOHN V. CARR & SON, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 6, 1956)

*Henry M. Hogan* (*Donald K. Barnes* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The plaintiff herein imported certain automobile pistons from Canada. At the time of importation, the pistons were packaged as follows:

* * * wood boxes were lined with cardboard; a cardboard separator was placed at the bottom of each box; a piston was placed in each cell of the cardboard separator; the layer was covered with a flat piece of cardboard; successive layers were similarly built up until the box was full; the wood cover was then placed on the box and held in position by one-half inch steel bands; eight boxes were assembled in two layers of four to a wood pallet and held in place by three-quarter inch steel bands; each shipping package thus consisted of the assembly of one wood pallet, eight wood boxes with their cardboard linings and separators and their wood covers, tied together with steel bands. [Stipulation of counsel, par. 7.]

The pistons were assessed with duty at the rate of 12½ per centum ad valorem under paragraph 369 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, as parts of automobiles, on the basis of a value which included the cost of the foregoing wooden boxes and pallets.

Acting under purported authority of section 504 of the same act, additional duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the said act, as modified, for manufactures wholly or in chief value of wood, not specially provided for, was assessed by the collector on the wooden boxes and pallets. The said section 504 provides as follows:

SEC. 504. COVERINGS AND CONTAINERS.

If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

By its protest filed herein, the plaintiff denies that the wooden boxes and pallets are unusual materials, articles, or forms and denies that they were designed for use otherwise than in the *bona fide* transportation of such merchandise to the United States, and claims that section 504, *supra*, is inapplicable.

The issue was submitted for decision upon a written stipulation of counsel, of which the following pertinent portions are here quoted:

6. The imported merchandise consisted of automobile pistons fully finished and ready for assembly with piston rings and wrist pins into automobile engines; finished pistons, as distinguished from unfinished pistons or piston castings, must be protected in transit against nicks and scratches which may result from metal-to-metal contact and from malformation which may develop from pressure, the degree of such protection required depending upon the method, distance and conditions of transportation.

\*      \*      \*      \*      \*      \*      \*

8. Plaintiff's Exhibits 2 through 6, consisting of photographs of containers typical of those here in issue, are fair representations of what they purport to show and may be received in evidence, as follows:

*Plaintiff's Exhibit 2* illustrates the face of a complete package as shipped, except that the steel bands have not been applied. It shows four boxes resting on a pallet, each marked "Fragile—Handle With Care" and showing the Custom Entry on which duty was paid upon first importation. As shipped, there are four more boxes behind those here visible.

*Plaintiff's Exhibit 3* illustrates the side of a typical box, the dimensions of which are 23″ x 24½″ x 28½″ high, bearing the legends "When Empty Return to Thompson Products Limited, St. Catharines, Ont." and "Returnable Box No. 550."

*Plaintiff's Exhibit 4* illustrates a view into the top of a typical box, with the cover, top liner, and top layer of pistons removed, showing the side liners and the separators.

*Plaintiff's Exhibit 5* illustrates the same view as Exhibit 4 with the top layer of pistons in place.

*Plaintiff's Exhibit 6* illustrates a typical pallet.

9. The boxes, pallets, liners, and separators, and the package as a whole, were especially designed by John Pirrie, the head of the shipping department of the exporter Thompson Products Limited, in conjunction with the box manufacturer, for shipment of pistons sold by Thompson to Oldsmobile; the steel banding is standard for securing wood packages.

10. The boxes were of durable construction and were designed to be, and in fact were, reused for successive shipments of the pistons sold by Thompson to Oldsmobile; the pallets, liners and separators were disposable and were designed for one-time use, but in fact often survived for reuse for one or more subsequent shipments of the pistons sold by Thompson to Oldsmobile; the steel banding could be, and in fact was, used only once.

11. The contract between Thompson and Oldsmobile required the boxes when emptied to be returned to Thompson and, such was in fact done except as to the few boxes which were damaged in transit beyond repair; Oldsmobile made no use of any part of the package other than to receive the pistons.

12. During the life the contract between Thompson and Oldsmobile the containers were used solely to ship pistons from Thompson to Oldsmobile; following completion of that contract, Thompson has continued to use the containers to

ship automobile pistons to other customers, all of whom are in Canada; about three per cent of the use made of the boxes by Thompson is to ship cylinder liners, which are similar in size and shape to pistons, and require the same protection; on one occasion Thompson used some of the boxes to ship "piat tubes" for Canadian ordnance.

13. The method and materials as hereinabove described were used for packaging the pistons shipped by Thompson to Oldsmobile solely because that was believed to be the safest and cheapest way to ship finished pistons; methods and materials similar in all material respects are regularly used under similar circumstances; unfinished pistons are normally shipped in cardboard containers, and finished pistons are normally packed in cardboard containers for movement, as from department to department within the same plant, when strong protection is not required.

14. The value of the merchandise imported in the subject containers was over $1,000,000; the value of the containers was approximately $11,000.

15. The Protest herein was timely filed and Plaintiff has in all respects complied with applicable regulations so as to entitle Plaintiff to the relief sought if the Court determines that Section 504 is inapplicable to the subject containers.

\*    \*    \*    \*    \*    \*    \*

We are of the opinion that the record and exhibits amply establish that the boxes and pallets in issue were the usual and ordinary forms customarily used for the *bona fide* transportation of finished automobile pistons under the circumstances of the instant importations. Quite obviously, as set forth in the stipulation, the necessity of protecting such finished pistons in transit from nicks and scratches and from malformation, due to pressure, required that the wooden boxes should be substantially made and have pallets strapped thereto for careful handling. The boxes and pallets here involved were shown to be such as were essential for the purpose of transporting the finished pistons contained in them and to have no other purpose or use than the transportation of finished automobile pistons on both the instant *and subsequent* importations. The use for subsequent importations was an incident to the sturdy design necessary for the initial importation.

The theory behind the defendant's position is apparently that, even though the wooden boxes and pallets are, from a factual standpoint, the usual and ordinary containers in which finished automobile pistons are transported to the United States, if it appears, as it does appear here, that such containers are not destroyed after their first use but are actually exported and reused one or more times for the purpose of transporting subsequent shipments of finished automobile pistons, they are, from a legal standpoint, subject to the provisions of section 504. In other words, under this theory, containers, the necessary design and construction of which permit that they be reused again as containers, are by this fact taken out of the category of "usual" containers and characterized as "unusual" containers.

In the brief filed in its behalf, defendant cites the following cases as supporting the view that, under such circumstances, the boxes and

pallets were subject to the additional duty imposed on unusual containers: *United States* v. *W. J. Mulligan & Co.*, 29 C. C. P. A. (Customs) 117, C. A. D. 179; *United States* v. *Garramone*, 2 Ct. Cust. Appls. 30, T. D. 31577; *Balfour, Guthrie & Co., Ltd.* v. *United States*, 27 C. C. P. A. (Customs) 17, C. A. D. 55; *United States* v. *C. J. Tower & Sons*, 36 C. C. P. A. (Customs) 106, C. A. D. 406; and *John P. Herber & Co., Inc.* v. *United States*, 30 Cust. Ct. 193, C. D. 1519.

The *Mulligan* case, *supra*, involved the importation of alcoholic liqueurs, contained in glass containers in the form of birds and animals, not effectively denied by the plaintiff to be *unusual* containers, but claimed to be dutiable at a lesser rate than that imposed by the collector, on the ground that paragraph 810 of the Tariff Act of 1930 controlled their assessment, rather than section 504. The issues in that case and those in the case at bar were, of course, not similar, and the case seems to have been cited by the defendant for the following quotation therein from the decision in the case of *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T. D. 33393:

But if it appears that they are unusual and designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. The transportation referred to in the section may include placing the same in the hands of the retailer, or in some cases in the hands of the consumer, and an incidental use of the covering or container, if one exists, may be enjoyed by the retailer in selling the particular merchandise so transported. The value of the alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enhances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. * * *

It is clear that defendant interprets the foregoing language to mean that if a container which is in all respects the usual container of imported merchandise should have any subsequent substantial use or value as an article of commerce after it has served its initial purpose of transporting goods to this country, it is subject to the imposition of the additional duty provided for in section 504. With this interpretation we do not agree.

Except for certain special situations relating to cylindrical and tubular tanks or vessels, and certain bottles, etc., referred to in paragraphs 328 and 810, respectively, the tariff act places no additional duty upon the *usual* containers of dutiable merchandise apart from that imposed by virtue of the provisions of section 402, whereby the cost of such containers is included in the value on which duty is to be taken on the contents of the container. The usual containers of duty-free merchandise are themselves free of duty.

Where, however, the container of imported merchandise, whether dutiable or free, is *unusual*, the container is subject to additional duties under section 504. When the language just above quoted from the *Hohner* case is read in connection with the language which immediately precedes it in that opinion, it falls into its proper perspective. That language is as follows:

We think, in view of the obvious purpose of the statute under consideration and in the light of the cases referred to, as well as many others which we have examined but not cited, it must be concluded that Congress contemplated that the coverings or containers of imported merchandise, *if they are such as are customarily and ordinarily used in its transportation*, are not separately dutiable under the provisions of said subsection 18 [note—a predecessor of section 504 of the present act]. [Italics supplied.]

In other words, if it is first determined that the covering or container is such as is customarily and ordinarily used, it is not separately dutiable under section 504. *And this is so whether or not as an incident to the sturdy design and substantial construction of containers necessary for their initial use they may be used again for the same purpose.*

Note that the paragraph which follows that which has just been quoted starts out with this sentence:

But if it appears that they are unusual *and* designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. [Italics mine.]

The word used in the first line is "and," not "or." The containers which are dutiable under section 504 must meet the *two* tests of being (1) unusual, *and* (2) designed for use otherwise than in *bona fide* transportation of the merchandise imported therein. Thus, in *Laverge* v. *United States*, 119 F. 481, where boxes used as coverings for imported tobacco were *not* the usual coverings in which such tobacco was imported (and, hence, were unusual coverings), but were of no value and were thrown away or destroyed after the tobacco had been removed, they were not taxable under the additional duty provision in section 19, Tariff Act of 1890, a predecessor of section 504 of the present act. The coverings obviously met the first test of being unusual coverings, but did not meet the second test of being designed for use otherwise than in the *bona fide* transportation of the merchandise.

In the *Hohner* case, the Court of Customs Appeals did not make a specific finding on the question of whether the wooden tray boxes there involved were usual or unusual containers, but found that, at any rate, they did not have any substantial use other than transportation. In such circumstances, it was unnecessary to find whether they were usual or unusual containers.

The *Garramone* and *Balfour, Guthrie* cases, cited by the defendant, involved importations of tomato paste and palm oil, respectively, con-

tained in certain cylindrical metal containers or drums, on which containers duty was levied, not by virtue of section 504 or its predecessors, but by virtue of paragraph 151, Tariff Act of 1909, or paragraph 328 of the present act, imposing duties on such containers "whether full or empty." In the *Balfour, Guthrie* case, citing *Colby* v. *United States*, 3 Ct. Cust. Appls. 234, T. D. 32542, it was held that the duties provided for in those paragraphs were upon the containers and not upon the contents, and the question really was whether the containers had any value apart from their contents. In those cases, where the containers were destroyed by the removal of their contents, they were held to be free of the duties imposed upon the containers (e. g., the *Garramone* case, and *United States* v. *Braun Chemical Co.*, 2 Ct. Cust. Appls. 57, T. D. 31596), while in the cases where the container could be used again or had a value apart from its contents, it was held to be dutiable (e. g., the *Balfour, Guthrie* case, and *United States* v. *C. J. Tower & Sons*, 36 C. C. P. A. (Customs) 106, C. A. D. 406).

It must be emphasized, however, that those cases related to special provisions of the tariff act *other than section 504* or its predecessors, and that the question at issue was *not* whether the containers were usual or unusual containers, but whether they had a value on which duty could be taken under the said special provisions.

The *Herber* case, cited by defendant, did not relate to any question of unusual containers, but arose upon the issue of whether leather cases fitted with carrying straps, imported with binoculars, and used after importation by the ultimate consumer or purchaser to hold the binoculars, *were containers under the valuation provisions of section 402* of the tariff act. It was there held that the containers specified in section 402 were, in the case of the binoculars and leather cases, the wooden transport boxes in which the same were imported and that the leather cases were not the containers contemplated by section 402 and were classifiable and dutiable separately from the binoculars. The unusual containers provision in section 504 was not involved in the case at all.

For the foregoing reasons and on the record presented, the protest claim is sustained and judgment will issue accordingly.